1  ERICA K. ROCUSH AZ Bar No. 021297
   Erica.Rocush@lewisbrisbois.com
2  **LEWIS BRISBOIS BISGAARD & SMITH** LLP
   Phoenix Plaza Tower II
3  2929 N. Central Avenue, Suite 1700
   Phoenix, Arizona 85012-2761
4  Telephone: (602) 385-1040
   Facsimile: (602) 385-1051
5
   JEFFREY S. RANEN, CA Bar No. 224285 (Admitted *Pro Hac Vice*)
6  Jeffrey.Ranen@lewisbrisbois.com
   JACK E. JIMENEZ, CA Bar No. 251648 (Admitted *Pro Hac Vice*)
7  Jack.Jimenez@lewisbrisbois.com
   **LEWIS BRISBOIS BISGAARD & SMITH** LLP
8  633 West 5th Street, Suite 4000
   Los Angeles, California 90071
9  Telephone: 213.250.1800
   Facsimile: 213.250.7900
10
   DEREK S. SACHS, CA Bar No. 253990 (Admitted *Pro Hac Vice*)
11 Derek.Sachs@lewisbrisbois.com
   **LEWIS BRISBOIS BISGAARD & SMITH** LLP
12 2020 West El Camino Avenue, Suite 700
   Sacramento, California 95833
13 Telephone: 916.564.5400
   Facsimile: 916.564.5444
14
   Attorneys for Defendants
15

16              UNITED STATES DISTRICT COURT

17                  DISTRICT OF ARIZONA

18 | Sean Delnoce, Colin Russell, Brian | No. 2:17-CV-01278-MHB
   Zimmerman, and Austin Edwards,
19 individually, and on behalf of all others | (The Honorable Michelle H. Burns)
   similarly situated,
20
                   Plaintiffs,             **DEFENDANTS' RESPONSE IN**
21                                         **OPPOSITION TO MOTION FOR**
         vs.                               **CONDITIONAL CERTIFICATION**
22                                         **AND COURT-SUPERVISED**
   Globaltranz Enterprises, Inc., Andrew J. **NOTICE OF PENDING**
23 Leto and Jane Doe Leto, a married       **COLLECTIVE ACTION**
   couple, Michael Leto and Jane Leto Ii, a
24 married couple, and Marty Sinicrope
   and Jane Doe Sinicrope, a married
25 couple,

26                   Defendants.

27

28

4830-1127-6618.1

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................... 1

II.   LEGAL ARGUMENT ...................................................................... 1

    A.   The Court Has Discretion to Deny Plaintiffs' Motion And Should Deny The Motion In Light Of Their Failure To Meet The FLSA's Requirements For Conditional Certification ......................... 1

    B.   The Court Should Deny Conditional Certification Because Plaintiffs Have Failed To Offer Evidence Of Opt-In Interest ............... 2

    C.   Plaintiffs' Have Also Failed To Satisfy Their Evidentiary Burden That They And The Putative Collective Members Are Similarly Situated .............................................................................................. 3

    D.   Plaintiffs' Claim Requires A Highly Individualized And Fact-Intensive Analysis That Is Not Suitable For Collective Action Treatment ........................................................................................... 5

    E.   Plaintiff Colin Russell Executed A Valid And Enforceable Release Which Waives His Procedural Right To Pursue A Collective Action ................................................................................ 10

III.   IN THE EVENT THIS COURT GRANTS CONDITIONAL CERTIFICATION, PLAINTIFF SHOULD NOT BE GRANTED THE RELIEF REQUESTED ................................................................... 10

    A.   Given The Absence Of Evidence Of Any Willful Violation, The Statute Of Limitations Should Be Limited To A Two-Year Period From The Date Of Consent .................................................... 10

    B.   A 30-Day Opt-In Period Is Sufficient .................................................. 11

    C.   The Notice Should Be Revised After The Parties' Meet And Confer So That It Is Fair And Accurate, And Administered By A Third Party ........................................................................................ 12

    D.   Notice Should Be Limited To The Specific Office That Plaintiffs Worked ............................................................................................... 14

    E.   Any Notice Distributed to Putative Collective Members Should Be Sent By First-Class Mail To Their Last Known Mailing Address Only ..................................................................................... 14

IV.   CONCLUSION .............................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# **TABLE OF AUTHORITIES**

## Cases

*Aguirre v. Tastee Kreme #2, Inc.,*
 2017 U.S. Dist. LEXIS 83944 (S.D. Tex. Apr. 13, 2017) ............................. 15

*Bernard v. Household Int'l, Inc.,*
 231 F. Supp. 2d. 433 (E.D. Va. 2002) ........................................................ 14

*Cardoza v. Bloomin' Brands Inc.,*
 2014 U.S. Dist. LEXIS 152903 (D. Nev. Oct. 24, 2014) ............................ 15

*Cash v. Conn Appliances, Inc.,*
 2 F. Supp. 2d 884 (E.D. Tex. 1997) ........................................................... 11

*Colozzi v. St. Joseph's Hospital Health Center,*
 595 F. Supp. 2d 200 (N.D.N.Y. 2009) ....................................................... 15

*Colson v. Avnet, Inc.,*
 687 F. Supp. 2d 914 (D. Ariz. 2010) ............................................................ 5

*Cooke v. General Dynamics Corp.,*
 993 F. Supp. 56 (D. Conn. 1997) ................................................................. 7

*Dean v. Priceline.com, Inc.,*
 2001 U.S. Dist. LEXIS 24982 (D. Conn. June 6, 2001) ................................ 6

*Dybach v. State of Fla. Dept. of Corr.,*
 942 F.2d 1562 (11th Cir. 1991) ................................................................... 2

*Evancho v. Sanofi-Aventis U.S., Inc.,*
 2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 18, 2007) ................................. 9

Freedman v. Wal-Mart Stores,, 256 F. Supp. 2d 941 (W.D. Ark. 2003) ................... 2

*Freeman v. Wal-Mart Stores, Inc.,*
 256 F. Supp. 2d 941 (W.D. Ark. 2003) ........................................................ 6

*Gutescu v. Carey Intl, Inc.,*
 2003 U.S. Dist. LEXIS 27507 (S.D. Fla. June 17, 2003) ........................... 13

*Hampshire v. Port Arthur Indep. Sch. Dist.,*
 2006 U.S. Dist. LEXIS 88874 (E.D. Tex. Dec. 7, 2006) .............................. 4

*Hart v. U.S. Bank NA,*
 2013 U.S. Dist. LEXIS 160147 (D. Ariz. Nov. 8, 2013) ............................ 15

*Held v. National R.R. Passenger Corp.,*
 101 F.R.D. 420 (D.D.C. 1984) ................................................................... 11

*Hoffman-LaRoche, Inc. v. Sperling,*
 493 U.S. 165 (1989) ............................................................................ 1, 10

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4830-1127-6618.1

ii

*Jackson v. City of San Antonio,*
    220 F.R.D. 55 (W.D. Tex. 2003) ............................................... 12

*Johnson v. American Airlines, Inc.,*
    531 F. Supp. 957 (N.D. Tex. 1982) ........................................... 11

*Joiner v. Groupware Int'l Inc.,*
    2010 U.S. Dist. LEXIS 59107 (M.D. Fla. May 27, 2010) .......... 13

*King v. ITT Cont'l Baking Co.,*
    No. 84 C 3410, 1986 U.S. Dist. LEXIS 29321 (N.D. Ill. Feb. 18, 1986) ........................................................................................... 11

*Lance v. Scotts Co.,*
    2005 U.S. Dist. LEXIS 14949 (N.D. Ill. 2005) ........................... 2

*Laroque v. Domino's Pizza, LLC,*
    557 F. Supp. 2d 346 (E.D.N.Y. 2008) ....................................... 14

*Lawson v. Bell South Telecomms., Inc.,*
    2011 U.S. Dist. LEXIS 91322 (N.D. Ga. Aug. 16, 2011) .......... 12

*Lewis v. Wells Fargo & Co.,*
    2009 U.S. Dist. LEXIS 102773 (N.D. Cal. 2009) ....................... 13

*Lima v. Int'l Catastrophe Solutions, Inc.,*
    493 F. Supp. 2d 793 (E.D. La. 2007) ........................................... 3

*Lusardi v. Xerox Corp.,*
    118 F.R.D. 351 (D. N. J. 1987) ................................................. 10

*Mackenzie v. Kindred Hosps. E., L.L.C.,*
    276 F. Supp. 2d 1211 (M.D. Fla. 2003) ....................................... 2

*Mike v. Safeco Ins. Co. of Am.,*
    274 F. Supp. 2d 216 (D. Conn. 2003) .......................................... 5

*Morisky v. Pub. Serv. Elec. & Gas Co.,*
    111 F. Supp. 2d 493 (D.N.J. 2000) .............................................. 6

*Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.,*
    2011 U.S. Dist. LEXIS 92002 (S.D. Fla. 2011) ........................... 3

*Parker v. Rowland Express, Inc.,*
    492 F. Supp. 2d 1159 (D. Minn. 2007) .................................... 2, 3

*Pfohl v. Farmers Ins. Group,*
    2004 U.S. Dist. LEXIS 6446 (C.D. Cal. Mar. 1, 2004) ............... 3

*Pfohl v. Farmers Ins. Group,*
    2004 U.S. Dist. LEXIS 6447 (C.D. Cal. 2004) ............................ 2

*Rappaport v. Embarq Mgmt. Co.,*
    2007 U.S. Dist. LEXIS 92869 (M.D. Fla. Dec. 18, 2007) ........... 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Reab v. Electronic Arts, Inc.,*
　　214 F.R.D. 623 (D. Colo. 2002) .................................................................. 15

*Roberts v. Nat'l Autotech, Inc.,*
　　192 F. Supp. 2d 672 (N.D. Tex. 2002) ......................................................... 7

*Russo v. BellSouth Telecomms., Inc.,*
　　2009 U.S. Dist. LEXIS 20552 (N.D. Ga. Feb. 10, 2009) .............................. 3

*Severtson v. Phillips Beverage Co.,*
　　137 F.R.D. 264 (D. Minn. 1991) ................................................................... 2

*Silverman v. SmithKline Beecham Corp.,*
　　2007 U.S. Dist. LEXIS 80030 (C.D. Cal. 2007) .......................................... 4

*Simpkins v. Pulte Home Corp.,*
　　2008 U.S. Dist. LEXIS 64270 (M.D. Fla. Aug. 21, 2008) .......................... 12

*Trinh v. JP Morgan Chase & Co.,*
　　2008 U.S. Dist. LEXIS 33016 (S.D. Cal. Apr. 22, 2008) ......................... 5, 9

*Tussing v. Quality Resources, Inc.,*
　　2009 U.S. Dist. LEXIS 110190 (M.D. Fla. 2009) ......................................... 3

*Watkins v. Miliken & Co.,*
　　613 F. Supp. 408 (W.D.N.C. 1984) ............................................................ 11

*Wong v. HSBC Mortg. Corp.,*
　　749 F. Supp. 2d 1009 (N.D. Cal. 2010) ........................................................ 6

<u>Statutory Authorities</u>

29 U.S.C. § 216(b) ................................................................................................... 1

29 U.S.C. § 255(a) ................................................................................................. 10

29 U.S.C. § 256(b) ................................................................................................. 11

<u>Rules and Regulations</u>

29 C.F.R. § 541.200 ................................................................................................. 7

29 C.F.R. § 541.200(a)(2)&(3) ............................................................................... 7

29 C.F.R. § 541.202(b) ............................................................................................ 7

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4830-1127-6618.1

iv

1       Defendants GlobalTranz Enterprises, Inc., Andrew Leto, Michael Leto, and

2 Marty Sinicrope ("Defendants") hereby submit their Response In Opposition to

3 Plaintiffs' Motion for Conditional Certification and Court-Supervised Notice of

4 Pending Collective Action.

5 **I.**    **INTRODUCTION**

6       Plaintiffs—with their four boilerplate declarations—have failed to meet their

7 burden of demonstrating that all former and current Carrier Representatives and Logistics

8 Specialists are "similarly situated" under the Fair Labor Standards Act ("FLSA"), 29

9 U.S.C. § 216(b). Plaintiffs have also failed to show that there are other potential collective

10 members that are actually interested in participating in this action.

11       Moreover, in misclassification cases such as the instant action, Plaintiffs must

12 demonstrate a sufficient factual basis that they and the putative members of the collective

13 action have substantially similar job duties and responsibilities and spend substantially

14 similar amounts of time performing them as the other putative collective members.

15 Plaintiffs have failed to do so. Therefore, the Court would be required to hear evidence

16 specific to each individual's day-to-day tasks, roughly estimate how much time they spent

17 performing administrative tasks, and then decide whether the administrative tasks defined

18 or predominated the individual's job. This highly individualized and fact-intensive inquiry

19 renders collective treatment inappropriate, even at the notice stage. Accordingly, the Court

20 should deny Plaintiffs' motion for conditional certification.

21 **II.**    **LEGAL ARGUMENT**

22      **A.**    **The Court Has Discretion to Deny Plaintiffs' Motion And Should**

23               **Deny The Motion In Light Of Their Failure To Meet The FLSA's**

24               **Requirements For Conditional Certification**

25       The decision to create an opt-in class under the FLSA is left to the sound discretion

26 of the district court with caution from the Supreme Court that this discretion should be

27 exercised only in "appropriate cases." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165,

28 169 (1989). Because determinations of whether employees have been misclassified turns

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  upon a fact-intensive evaluation of each employee's duties, "[i]t would be a waste of the

2  Court's and the litigants' time and resources to notify a large and diverse class only to later

3  determine that the matter should not proceed as a collective action because the class

4  members are not similarly situated." *Freedman v. Wal-Mart Stores,*, 256 F. Supp. 2d 941,

5  945 (W.D. Ark. 2003).  Notice to such a "class" also runs the very real risk of inviting

6  individuals without a viable claim to become litigants.  *Severtson v. Phillips Beverage Co.*,

7  137 F.R.D. 264, 267 (D. Minn. 1991) (before sending notice, court must determine that

8  manageable class exists to avoid "stirring up" litigation through unwarranted solicitation).

9  **B.**    **The Court Should Deny Conditional Certification Because**

10  **Plaintiffs Have Failed To Offer Evidence Of Opt-In Interest**

11  A common consideration by courts assessing conditional certification is whether

12  plaintiffs can show that other similarly situated employees actually wish to join their

13  lawsuit.  In *Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir.

14  1991), the Eleventh Circuit held that, before exercising its power to conditionally certify a

15  collective action, a "district court should satisfy itself that there are other employees of the

16  department-employer who desire to 'opt-in' and who are 'similarly situated' with respect

17  to their job requirements and with regard to their pay positions." *Dybach* has been

18  followed by many other federal district courts. See *Parker v. Rowland Express, Inc.*, 492 F.

19  Supp. 2d 1159, 1166 (D. Minn. 2007) (denying conditional certification where no interest

20  from other opt ins and stating plaintiff must do more than show the mere existence of other

21  similarly situated persons); *Lance v. Scotts Co.*, 2005 U.S. Dist. LEXIS 14949, *26-27

22  (N.D. Ill. 2005) (denying conditional certification where plaintiff failed to present evidence

23  that others desired to opt in); *Pfohl v. Farmers Ins. Group*, 2004 U.S. Dist. LEXIS 6447, *

24  32 (C.D. Cal. 2004) (denying conditional certification where only 13 out of hundreds of

25  possible opt-ins expressed an interest in opting into the suit); *Mackenzie v. Kindred Hosps.*

26  *E., L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (stating that "unsupported

27  expectations that additional plaintiffs will subsequently come forward" are insufficient to

28  justify notice).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4830-1127-6618.1                                2

1    Here, Plaintiffs collectively worked several years for GlobalTranz. Yet, they have

2    failed to identify any other Carrier Representatives or Logistics Specialists that desire to

3    opt-in. Plaintiffs are simply on a fishing expedition (at Defendants' expense) and have not

4    demonstrated that any potential collective members are actually interested in participating

5    in this action. As the *Parker* court concluded, "an FLSA plaintiff is not entitled to

6    conditional certification simply to seek out others who might wish to join the action."

7    *Parker*, 492 F. Supp. 2d at 1166. As such, the Court should deny conditional certification

8    on this basis alone.

9    **C.   Plaintiffs' Have Also Failed To Satisfy Their Evidentiary Burden**

10        **That They And The Putative Collective Members Are Similarly**

11        **Situated**

12    Even if Plaintiffs could offer evidence of opt-in interest by other employees,

13    Plaintiffs have also failed to meet their evidentiary burden that they and the putative

14    collective members are similarly situated. See *Pfohl v. Farmers Ins. Group*, 2004 U.S.

15    Dist. LEXIS 6446, *3 (C.D. Cal. Mar. 1, 2004) (Plaintiff bears the burden of proving that

16    the potential members of the class are "similarly situated"). While the burden is not

17    particularly stringent, it is by no means automatic. *Lima v. Int'l Catastrophe Solutions,*

18    *Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007). Where, as here, "plaintiffs seek to send

19    court-approved notice to potential plaintiffs at the first-tier conditional certification stage,

20    courts should treat those requests with a higher level of scrutiny." *Russo v. BellSouth*

21    *Telecomms., Inc.*, 2009 U.S. Dist. LEXIS 20552, *17 (N.D. Ga. Feb. 10, 2009).

22    Courts routinely deny conditional certification where plaintiffs attempt to certify a

23    class "based only on the conclusory allegations of a few employees" with "boilerplate

24    attorney-drafted declarations" as the Plaintiffs in this action attempt to do. See, e.g.,

25    *Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 2011 U.S. Dist. LEXIS 92002,

26    *5 (S.D. Fla. 2011) ("Plaintiff attached three almost identical, cut-and-paste

27    declarations...The Court strongly disapproves of the use of boilerplate attorney-drafted

28    declarations"); *Tussing v. Quality Resources, Inc.*, 2009 U.S. Dist. LEXIS 110190, *7

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4830-1127-6618.1                                    3

1  (M.D. Fla. 2009) ("unsupported assertions that FLSA violations are widespread" are

2  insufficient, and "Plaintiffs' affidavits are largely the same affidavit signed by six different

3  employees, with minor differences in the hope that all jobs will be considered fungible");

4  *Rappaport v. Embarq Mgmt. Co.*, 2007 U.S. Dist. LEXIS 92869, *11-15 (M.D. Fla. Dec.

5  18, 2007) (denying conditional certification because plaintiffs affidavits were "vague and

6  appear to be form documents recycled from previous litigation"); *Silverman v. SmithKline*

7  *Beecham Corp.*, 2007 U.S. Dist. LEXIS 80030, *2, n. 5 (C.D. Cal. 2007) ("Plaintiff has

8  provided nine declarations from one current and eight former GSK sales representatives in

9  support of his claim that the members of the putative class are similarly situated. These

10  declarations are nearly identical...The Court strongly disapproves of the use of boilerplate

11  attorney-drafted declarations"); *Hampshire v. Port Arthur Indep. Sch. Dist.*, 2006 U.S.

12  Dist. LEXIS 88874, *13-14 (E.D. Tex. Dec. 7, 2006) ("[T]he nearly identical statements in

13  the affidavits that affiants have personal knowledge of other potential plaintiffs who are

14  similarly situated are insufficient for the court to find that such plaintiffs exist.").

15     Here, Plaintiffs have failed to meet their burden by submitting four boilerplate

16  declarations that are virtually identical to one another in alleging with broad, unsupported

17  (and inadmissible) statements that they are "similarly situated" to all Carrier

18  Representatives and Logistics Specialists (See Plaintiffs' Motion for Conditional

19  Certification, Doc. No. 22, Exhibits A – D).  Further, Plaintiffs boilerplate declarations

20  contradict their own allegations from the Complaint.  For example, Plaintiff Brian

21  Zimmerman declares that he was a Carrier Representative from approximately March 1,

22  2014 through approximately February 28, 2015.  Yet, in the Complaint, Plaintiff

23  Zimmerman alleges he was a Logistics Specialist from approximately December 1, 2013

24  through approximately February 28, 2015.[1]  (See Paragraph 16 in Plaintiffs' Complaint,

25  Doc. No. 1 and Doc. No. 22, Exhibit C.)  Plaintiff Colin Russell alleges in the Complaint

26

27  [1] Plaintiff Brian Zimmerman also worked in a non-exempt AP Support position in
    February 2015.  (Lisa Elowson Declaration ¶ 5.)

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   that he earned an annual base salary of $30,000 during the approximately first 90 days of

2   his employment.  However, Plaintiff Russell omits any reference to ever earning an annual

3   base salary of $30,000 in his declaration.  (See Paragraph 56 in Plaintiffs' Complaint, Doc.

4   No. 1 and Doc. No. 22, Exhibit B.)  In addition, Plaintiff Sean Delnoce worked as a

5   manager from July 9, 2015 to the end of his employment.  Yet, Plaintiff Delnoce declares

6   that he worked as a Carrier Representative in July 2015.  (See Doc. No. 22, Exhibit A and

7   Lisa Elowson Declaration ¶ 4.)  Consequently, based on the four cookie-cutter declarations

8   submitted by Plaintiffs that fail to provide sufficiently detailed and reliable evidence, the

9   Court should deny Plaintiff's motion.

10   **D.     Plaintiffs' Claim Requires A Highly Individualized And Fact-**

11   **Intensive Analysis That Is Not Suitable For Collective Action**

12   **Treatment**

13          Another factor that courts consider in making the fact-specific determination

14   whether plaintiffs are similarly situated to the class is the extent to which the members of

15   the proposed action will rely on common evidence.  *Trinh v. JP Morgan Chase & Co.*,

16   2008 U.S. Dist. LEXIS 33016, *7-8 (S.D. Cal. Apr. 22, 2008); *Mike v. Safeco Ins. Co. of*

17   *Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (denying motion to proceed collectively

18   and noting that before authorizing class notice "the court must be satisfied that there is a

19   basis to conclude that questions common to a potential group of plaintiffs would

20   predominate a determination of the merits in the case").

21          Here, the crux of Plaintiffs' claim is that they and all former and current Carrier

22   Representatives and Logistics Specialists have similar duties and that Defendants

23   unlawfully classified them as "exempt" employees, and thus Defendants owe them

24   overtime for time worked over forty hours.  It is well-settled, however, an employer's

25   classification (or alleged misclassification) of employees is not a "policy" or "practice"

26   that can alone support conditional certification. See, e.g., *Colson v. Avnet, Inc.*, 687 F.

27   Supp. 2d 914, 927-928 (D. Ariz. 2010) (denying conditional certification and noting that

28   "[a]s a matter of both sound public policy and basic common sense, the mere classification

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4830-1127-6618.1                                            5

1  of a group of employees—even a large or nationwide group—as exempt under the FLSA is

2  not by itself sufficient to constitute the necessary evidence of a common policy, plan, or

3  practice that renders all putative class members as 'similarly situated' for § 216(b)

4  purposes."); *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark.

5  2003) ("Adopting Plaintiff's position would require us to conclude that if an employer has

6  two or more non-officer, salaried employees who allegedly are not being paid overtime as

7  required by the Act, then a collective action would be appropriate under 216(b) . . . We do

8  not agree."); *Dean v. Priceline.com, Inc.*, 2001 U.S. Dist. LEXIS 24982, *6-7 (D. Conn.

9  June 6, 2001) (rejecting the claim that, "putative class members are similarly situated

10  because all were denied overtime pay as a result of being misclassified as exempt");

11  *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (denying

12  plaintiffs' motion to certify the putative class because the "'common' . . . 'plan' or

13  'scheme'" alleged by plaintiffs was nothing more than defendant's "determination that

14  they are exempt under the FLSA"). Thus, Plaintiffs' motion cannot stand on the allegation

15  that Defendants misclassified Carrier Representatives and Logistics Specialists as exempt.

16      Plaintiffs have also failed to establish they are similarly situated to the putative

17  collective members because they have not (and cannot) allege that all putative collective

18  members are not highly compensated (for the highly compensated employee exemption) or

19  not eligible for the combination exemption. See *Wong v. HSBC Mortg. Corp.*, 749 F.

20  Supp. 2d 1009, 1017-18 (N.D. Cal. 2010) (recognizing that employee with a primary duty

21  of sales may still qualify for the highly compensated employee exemption based on his or

22  her other duties). This is yet another reason to deny Plaintiff's motion.[2]

23      Furthermore, whether Plaintiffs and the putative collective members are "exempt"

24

25

26  [2] To the extent that Plaintiffs argue that no individual inquires are necessary because none

27  of the exemptions apply to them, it cuts against their argument that Plaintiffs are similarly
   situated to all putative collective members.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4830-1127-6618.1                                                6

1   necessarily involves a fact-by-fact inquiry into the circumstances of his or her employment

2   to assess if he or she falls within an exemption under the FLSA.  For example, an

3   employee qualifies for the administrative exemption if the employee's "primary duties"

4   involve "the performance of office or non-manual work directly related to the management

5   or general business operations of the employer or the employer's customers," and

6   "includes [] the exercise of discretion and independent judgment with respect to matters of

7   significance." 29 C.F.R. § 541.200(a)(2)&(3).  The regulations provide a long list of non-

8   exhaustive factors to consider in determining whether work involves discretion and

9   independent judgment. *Id.*, § 541.202(b). Accordingly, an examination of whether an

10  employee qualifies as administratively exempt requires several factual determinations: (1)

11  an appraisal of the employee's primary duties; (2) a judgment of whether such duties

12  require the "performance of office or non-manual work directly related to the management

13  or general business operations;" (3) a more complex analysis of whether the employee

14  exercises discretion and independent judgment; and (4) if the discretion and independent

15  judgment exercised is "with respect to matters of significance." *Id.*, § 541.200.  This

16  complex, multi-step determination of an employee's administratively exempt status

17  requires "a detailed analysis of the time spent performing administrative duties" and "a

18  careful factual analysis of the full range of the employee's job duties and responsibilities."

19  See *Cooke v. General Dynamics Corp.*, 993 F. Supp. 56, 59-61 (D. Conn. 1997); *Roberts*

20  *v. Nat'l Autotech, Inc.*, 192 F. Supp. 2d 672, 677 (N.D. Tex. 2002) ("Case law on exempt

21  status under the FLSA underscores the fact-specific nature of the inquiry.")

22         Here, Plaintiffs' have failed to submit any evidence that they are similarly situated

23  to other putative collective members in a way that would be material to the exemption

24  issues. The single Logistics Specialist Plaintiff and three Carrier Representative Plaintiffs

25  simply make sweeping and conclusory statements about their own primary duties without

26  indicating how much time is spent on each duty or whether they exercised discretion and

27  independent judgment or if the discretion and independent judgment exercised was "with

28  respect to matters of significance."  As noted in the declaration of Benjamin Buchanan, a

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4830-1127-6618.1                                                    7

1  Carrier Representative's primary duties include managing the daily operation of full
2  truckload shipments, including strategically matching, negotiating, and booking available
3  equipment with available freight; reviewing current market trends; researching carriers;
4  promoting GlobalTranz's services to carriers; negotiating shipping rates with the carrier;
5  tracking shipments and solving problems associated with the shipments until delivered;
6  communicating with Logistics Specialists, other departments, customers, and outside
7  agents regarding supply and demand of truckload markets; and managing, maintaining,
8  and growing carrier relationships to optimize operational efficiency and costs for the
9  benefit of GlobalTranz and its customers. (Benjamin Buchanan Declaration ¶ 7.)

10         Likewise, a Logistics Specialists' primary duties include finding and building
11  relationships with customers to determine what shipping options and services best meet
12  their needs; quoting, negotiating pricing, and building shipments for customers, which
13  requires, among other things, knowledge about the trucking industry, the particular
14  customer, and potential carriers; dispatching shipments to the carrier for customers that
15  want to ship less than full truckloads; managing the movement of the customer's goods,
16  ensuring that they are picked up, transported and delivered on time to meet or exceed the
17  customer's expectations and requirements; and communicating with the Carrier
18  Representatives and other departments to discuss, among other things, load options, load
19  details, issues relating to credit/claims/billing/collections, tracking updates, and
20  lost/damaged shipments. (Benjamin Buchanan Declaration ¶ 11.)

21         Further, as the Logistics Specialist builds a book of business, they spend less time
22  finding customers and more time quoting, negotiating pricing, and building shipments;
23  managing freight and customer's expectations; and interacting with the Carrier
24  Representatives and other departments.  In addition, a Logistics Specialist with a larger full
25  truckload book of business will spend more of their time servicing the customer.  Between
26  2014 and 2016, if a Logistics Specialist obtained a certain margin, they could utilize one or
27  two other employees to assist with routine tasks, which provided the Logistics Specialist
28  with more time to develop and manage relationships with their customers. (Benjamin

4830-1127-6618.1                                8

1  Buchanan Declaration ¶¶ 12-13.)

2      Plaintiffs have failed to provide competent evidence of what duties the putative

3  collective members primarily perform or if those duties related to the performance of

4  office or non-manual work directly related to the management or general business

5  operations of the employer or the employer's customers or how much time the putative

6  collective members spent on those duties or if they exercised discretion and independent

7  judgment with respect to matters of significance in performing those duties.  Indeed, there

8  are numerous cases where courts found that collective litigation of exempt status was

9  inappropriate where variations in how employees completed their duties led some of the

10 employees to meet the test of an exemption and some not to meet the test.  See *Trinh v. JP*

11 *Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 33016, *4-5 (S. D. Cal. 2008) (denying

12 conditional certification and stating that "[b]ecause of the individualized inquiries involved

13 [in determining if employees are exempt], the Court finds that judicial economy would not

14 be advanced by allowing this suit to proceed as a collection action); *Evancho v. Sanofi-*

15 *Aventis U.S., Inc.*, 2007 U.S. Dist. LEXIS 93215, *12 (D.N.J. Dec. 18, 2007) (denying

16 conditional certification and noting "[w]hile the Court need not reach the merits of these

17 exemption arguments at this point, these difference between various [Pharma Reps']

18 descriptions of their job responsibilities and duties show that status under the FLSA may

19 vary among plaintiffs and potential collective action members.")

20     Moreover, even assuming no exemption under the FLSA applies, Plaintiffs and the

21 putative collective members must still establish they worked more than forty hours a week.

22 This factual inquiry would require individualized testimony and individualized review of

23 each employee's time records, emails, phone records, or other records (if any) evidencing

24 time each employee spent working outside of the office.  The de minimis and statute of

25 limitations defenses will also require individual examination.  In addition, as already

26 demonstrated above, there are credibility conflicts that cannot be resolved without

27 individualized adjudications, which, of course, is contrary to class treatment.

28     In sum, all of these issues highlight that allowing this proposed collective action to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  proceed would be unmanageable and contrary to the "efficient resolution in one

2  proceeding of common issues of law and fact arising from the same alleged [conduct]."

3  *Hoffman-La Roche*, 493 U.S. at 170; *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 370 (D. N. J.

4  1987) ("consolidation of these claims into a representative class with the attendant

5  defenses would not provide for an efficient proceeding"). Consequently, Plaintiffs' motion

6  should be denied.

7       **E.**    **Plaintiff Colin Russell Executed A Valid And Enforceable Release**

8             **Which Waives His Procedural Right To Pursue A Collective Action**

9       Plaintiffs' motion should be denied for another independent reason. Plaintiff Colin

10  Russell executed a valid and enforceable release, which waived his procedural right to

11  pursue collective adjudication of his claim. (Lisa Elowson Dec. ¶ 6, Exhibit A.) Although

12  an individual employee's rights under the FLSA generally cannot be abridged by contract,

13  this restriction applies only to an employee's *substantive* rights under the FLSA, not his

14  *procedural* rights. See *Lu v. AT&T Services, Inc.*, 2011 WL 2470268, at *9 ("the right to

15  proceed on a collective basis implicates an employee's procedural, as opposed to

16  substantive rights."). Plaintiff Colin Russell's release, therefore, waives his right to pursue

17  relief as a collective action.

18  **III.**   **IN THE EVENT THIS COURT GRANTS CONDITIONAL**

19        **CERTIFICATION, PLAINTIFF SHOULD NOT BE GRANTED THE**

20        **RELIEF REQUESTED**

21

22       **A.**    **Given The Absence Of Evidence Of Any Willful Violation, The**

23            **Statute Of Limitations Should Be Limited To A Two-Year Period**

24            **From The Date Of Consent**

25       The statute of limitations under the FLSA is normally two years, and it is extended

26  to three years only where the employer's violation of the FLSA is willful. 29 U.S.C. §

27  255(a). Despite bearing the burden, Plaintiffs have failed to establish an evidentiary basis

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4830-1127-6618.1              10

1    for a willful violation.  Plaintiffs' conclusory allegations are simply not enough for this
2    Court to even preliminarily find the limitations period should be extended.  Accordingly,
3    the FLSA's two-year statute of limitations should apply.

4           Moreover, the statute of limitations should not be measured from the date the action
5    was filed.  A collective action under the FLSA requires every person desiring to participate
6    to file a written consent with the court.  See 29 U.S.C. § 256(b); *Cash v. Conn Appliances,*
7    *Inc.,* 2 F. Supp. 2d 884, 897 (E.D. Tex. 1997) (stating that in collective actions, the statute
8    of limitations continues to run until consent is filed).  As such, if the Court approves any
9    notice to be sent, it should be limited to no more than a two-year period from the date a
10   valid consent is filed.

11   **B.     A 30-Day Opt-In Period Is Sufficient**

12
13          Plaintiffs provide no argument as to why a 60-day notice period is necessary in this
14   action.  The Court should permit enough time for putative collective members to opt-in,
15   but it should be sufficiently short for the parties to engage in discovery without fear of
16   contacting represented parties.  Given this is the second collective action lawsuit in the
17   past three years that Plaintiffs' counsel has brought against GlobalTranz raising the same
18   allegations, a 30-day opt-in period for putative collective members is more than sufficient
19   in this action, especially considering that most of the putative collective members were
20   already notified in the last lawsuit (that resolved and was approved by the Court in March
21   2017 – the month before counsel filed the instant action).  In addition, a shorter opt-in
22   period is beneficial to putative collective members as it allows them to avoid statute of
23   limitations defenses.  See also *Johnson v. American Airlines, Inc.,* 531 F. Supp. 957, 962
24   (N.D. Tex. 1982) (consent forms due 21 days from "transmittal of notice"); *Held v.*
25   *National R.R. Passenger Corp.,* 101 F.R.D. 420, 423 (D.D.C. 1984) (consent forms due
26   within 30 days of notice); *Watkins v. Miliken & Co.,* 613 F. Supp. 408, 421 (W.D.N.C.
27   1984) (30 days); *King v. ITT Cont'l Baking Co., No. 84 C 3410,* 1986 U.S. Dist. LEXIS
28   29321, *15 (N.D. Ill. Feb. 18, 1986) (30 days).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4830-1127-6618.1                                        11

**C.** **The Notice Should Be Revised After The Parties' Meet And Confer So That It Is Fair And Accurate, And Administered By A Third Party**

If this Court were to order that any notice should be sent, Defendants respectfully request that the Court deny Plaintiffs' request to utilize the notice attached to their moving papers, and instead follow the typical procedure of ordering the parties to meet and confer to devise a mutually acceptable and accurate notice. *See, e.g., Jackson v. City of San Antonio*, 220 F.R.D. 55, 63 (W.D. Tex. 2003) (ordering the parties to meet and confer upon the contents of the notice and consent form and provide a joint proposed notice and consent for to the Court). Such a course of action is particularly warranted in this case because multiple aspects of Plaintiffs' proposed notice are improper, unfairly prejudicial, and/or inaccurate.

First, Plaintiffs' references to the Court's purported approval of the proposed notice are inappropriate. Further, the capitalized paragraph at the end of Plaintiffs' proposed notice belongs at the top of the first page, to fully emphasize that the Court has not expressed any opinion about the merits of this case. See *Lawson v. Bell South Telecomms., Inc.*, 2011 U.S. Dist. LEXIS 91322, *32 (N.D. Ga. Aug. 16, 2011) (moving similar paragraph to top of notice).

Second, Plaintiffs' proposed notice fails to fully apprise putative collective members of their potential obligations that could arise should they choose to participate in the lawsuit. Further, the notice is misleading in that it only informs the putative collective members they are not responsible for Plaintiffs' attorneys' fees and costs if Plaintiffs lose the lawsuit, but the notice fails to fully advise potential collective members that there any consequences of their participating in the action. Such language is necessary, as "[i]t is important for putative class members to understand that certain time commitments and activities may be required if they join the lawsuit." *Lawson*, 2011 U.S. Dist. LEXIS 91322 at *34-36; See also *Simpkins v. Pulte Home Corp.*, 2008 U.S. Dist. LEXIS 64270, *27-29

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  (M.D. Fla. Aug. 21, 2008) ("[T]he Notice should explain that opt-in plaintiffs may be

2  required to sit for depositions, answer interrogatories, and could be responsible for a

3  portion of Defendant's costs); *Joiner v. Groupware Int'l Inc.*, 2010 U.S. Dist. LEXIS

4  59107, *6-7 (M.D. Fla. May 27, 2010) (directing the plaintiff to amend the notice to

5  include "(1) a full disclosure of an unsuccessful result to potential opt-in plaintiffs, e.g., the

6  plaintiffs may be responsible for the Defendant's costs, [and] (2) a full disclosure of the

7  possible consequences of opting in to the action, e.g., that the plaintiffs may be deposed,

8  which may entail travel, and may be propounded discovery for which they must invest the

9  time to answer").

10      Third, Plaintiffs' notice impermissibly omits Defendants' viewpoint.  Courts

11  typically authorize notice containing defendants' defenses or arguments in opposition to

12  the plaintiff.  See *Gutescu v. Carey Intl, Inc.*, 2003 U.S. Dist. LEXIS 27507, *56 (S.D. Fla.

13  June 17, 2003) (including notice language to the effect that the defendants denied plaintiffs

14  allegations); *Joiner*, 2010 U.S. Dist. LEXIS 59107, *6 (ordering "a brief explanation of

15  Defendant's bases for disputing liability or its denial of liability" be included in the notice).

16  Here, Plaintiffs' proposed notice impermissibly lacks any such information and only

17  includes Plaintiffs' position.

18      Additionally, Defendants request that the Court order Defendants to produce the

19  putative collective members' mailing addresses to a third-party administrator to conduct

20  the mailing, not Plaintiffs' counsel.  Plaintiffs have not set forth any reason why Plaintiffs'

21  counsel's office should oversee the mailing of notice, which would only encourage

22  Plaintiff's counsel to improperly solicit putative collective action members.  See *Lewis v.*

23  *Wells Fargo & Co.*, 2009 U.S. Dist. LEXIS 102773, *9-10 (N.D. Cal. 2009) ("the Court

24  finds that it would be more appropriate to have a third-party claims administrator distribute

25  the collective action notice").

26  / / /

27  / / /

28  / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4830-1127-6618.1

13

**D.**   **Notice Should Be Limited To The Specific Office That Plaintiffs Worked**

If this Court were to order that any notice should be sent, it should be limited to the Phoenix/Scottsdale location where Plaintiffs worked[3]. Plaintiffs make passing reference in their motion that notice should be sent to Carrier Representatives and Logistics Specialists that worked in GlobalTranz's Phoenix and Prescott Valley offices. Plaintiffs, however, have failed to submit any evidence that Plaintiffs are similarly situated to individuals at the Prescott Valley office. Instead, Plaintiffs have only come forward with declarations of their own individual experiences in the Phoenix/Scottsdale office. See *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355 (E.D.N.Y. 2008) (rejecting, for lack of evidence, the plaintiffs' proposal to conditionally certify a collective action at locations other than the store where the named plaintiffs worked); *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d. 433, 436-37 (E.D. Va. 2002) (limiting certification to the two locations that plaintiffs alleged through first-hand knowledge in their declarations).

**E.**   **Any Notice Distributed to Putative Collective Members Should Be Sent By First-Class Mail To Their Last Known Mailing Address Only**

Plaintiffs seek to not only mail notice twice, but also to email and text message every putative collective member twice that have not joined the lawsuit. Plaintiffs, however, have failed to provide a compelling reason why they need to distribute notice through so many channels. Plaintiffs have also failed to provide any evidence that first-class mail will be an unreliable means of delivering notice.

Moreover, Plaintiffs improperly seek the putative collective members' highly personal and private information (such as dates of birth, driver's license number, last four

---

[3] GlobalTranz moved its corporate office from Phoenix to Scottsdale in March 2016.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    digits of their social security number, email addresses, and telephone numbers), which is

2    not needed to effectuate the mailing. See *Aguirre v. Tastee Kreme #2, Inc.*, 2017 U.S.

3    Dist. LEXIS 83944, *23 (S.D. Tex. Apr. 13, 2017) (rejecting request to send notice by text

4    message because of the risk to mislead); *Hart v. U.S. Bank NA*, 2013 U.S. Dist. LEXIS

5    160147, *19 (D. Ariz. Nov. 8, 2013)(rejecting request to send notice by email to work

6    email address because it would be disruptive and sending notice to personal email address

7    would unduly invade privacy); *Cardoza v. Bloomin' Brands Inc.*, 2014 U.S. Dist. LEXIS

8    152903, *26 (D. Nev. Oct. 24, 2014) (denying plaintiffs' request for email addresses

9    because plaintiffs failed to demonstrate that something more than first-class mail was

10    necessary); *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630-31 (D. Colo. 2002) (denying

11    request for notice via email because of concerns about distortion or misleading notification

12    and stating "first class mail ensures, at the outset, that the appropriately targeted audience

13    receives the intended notification and maximizes the integrity of the notice process");

14    *Colozzi v. St. Joseph's Hospital Health Center*, 595 F. Supp. 2d 200, 210 (N.D.N.Y. 2009)

15    (rejecting request for inherently private information, including email addresses, telephone

16    numbers, social security numbers, and dates of birth).

17        Here, sending notice by email/text is not necessary and an undue invasion of

18    privacy [sending text message notice could also violate the Telephone Consumer

19    Protection Act]. Further, Plaintiffs' counsel's contact information will be on the notice, so

20    putative collective members may contact Plaintiffs' counsel if they wish to provide counsel

21    with their private information. As such, any notice distributed to putative collective

22    members should be sent by first-class mail to their last known mailing address only.

23    **IV.    CONCLUSION**

24        Plaintiffs have failed to meet their burden that they are "similarly situated" to the

25    putative collective members they seek to represent. Therefore, Defendants respectfully

26    / / /

27    / / /

28    / / /


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    request that the Court deny Plaintiffs' Motion for Conditional Certification.

2    DATED: June 20, 2017                    Respectfully submitted,

3

4                                            LEWIS BRISBOIS BISGAARD & SMITH LLP

5

6

7    By:     /s/ Jack E. Jimenez

8           Jeffrey S. Ranen
            Derek S. Sachs
9           Jack E. Jimenez
            Attorneys for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4830-1127-6618.1                            16

# FEDERAL COURT PROOF OF SERVICE

Sean Delnoce v. GlobalTranz Enterprises - 34464-148 - Case No. 2:17-CV-01278-MHB

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On June 20, 2017, I served the following document(s): DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION AND COURT-SUPERVISED NOTICE OF PENDING COLLECTIVE ACTION

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Clifford P. Bendau, II,Esq.                    Attorneys for Plaintiffs
Christopher J. Bendau, Esq.
THE BENDAU LAW FIRM PLLC
P.O. Box 97066
Phoenix, Arizona 85060
Telephone: (480) 382-5176
Fascimile: (602) 956-1409
Email: cliffordbendau@bendaulaw.com
        chris@bendaulaw.com

The documents were served by the following means:

☒   (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on June 20, 2017, at Los Angeles, California.

Geraldine Hughes

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4830-1127-6618.1

17